1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   NAM BA NGUYEN,                          No.  2:13-cv-963-MCE-EFB P

12              Plaintiff,

13        v.                                 FINDINGS AND RECOMMENDATIONS

14   CALIFORNIA PRISON HEALTH
     SERVICE, et al.,

15
                Defendants.
16

17          Plaintiff is a state prisoner proceeding pro se and in forma pauperis in an action brought

18   under 42 U.S.C. § 1983.  He alleges in his second amended complaint violations of his Eighth

19   Amendment and Fourteenth Amendment due process rights.  The crux of his complaint is that

20   defendants violated plaintiff's federally protected rights by showing deliberate indifference to his

21   medical needs and improperly processing his administrative appeals.

22          Defendant Nathanial K. Elam moves to dismiss the claims against him on the ground that

23   he neither participated in nor caused the violations of which plaintiff complains.  Careful review

24   of the pleadings shows that plaintiff has failed to state cognizable Eighth Amendment and due

25   process claims against Elam.  Accordingly, as discussed below, the motion to dismiss should be

26   granted.

27   /////

28   /////

                                                     1

1  **I.       Background**

2              **A.       Factual Allegations**

3              Although he is currently in the custody of U.S. Immigration and Customs Enforcement,

4  plaintiff was a state inmate at Salinas Valley State Prison in California when he filed the second

5  amended complaint.  ECF No. 50 at 4.  At all relevant times, defendant Elam served as Chief

6  Executive Officer ("CEO") of Clinical Services at California Medical Facility State Prison at

7  Vacaville ("CMF").  *Id.*

8              On May 21, 2010, plaintiff sustained injuries to his head, face, and hand in an altercation

9  with another inmate.  ECF No. 15 at 5–6.[1]  Plaintiff also had a preexisting shoulder injury.  *Id.* at

10  8.  On the same day, a nurse informed him that a doctor had prescribed "[T]ylenol #3" for seven

11  days.  *Id.* at 7.  It is unclear whether plaintiff received it.  *See id.* at 8.  The following day, plaintiff

12  went to a clinic to have a dressing for his burned hand changed.  *Id.*  There, he complained of pain

13  in his jaw that prevented him from chewing food.  *Id.*

14              On June 2, 2010, plaintiff visited defendant Sherman Champen, who worked as a nurse

15  practitioner at CMF.  ECF No. 15 at 5, 9.  Champen made an urgent request for X-rays to

16  plaintiff's facial bones.  *Id.* at 9, 48.  Champen also requested (1) consultation with an orthopedic

17  surgeon regarding plaintiff's shoulder, (2) Tylenol, and (3) cream for plaintiff's hand burn.  *Id.* at

18  9, 47, 49.

19              On June 23, 2010, plaintiff saw a doctor.  *Id.* at 9, 51.  The doctor discharged plaintiff

20  without ordering X-rays.  *Id.* at 10.  Around this time, plaintiff had lost weight because he could

21  not chew food normally due to his jaw pain.  *Id.*  Also, plaintiff was in pain because he had to

22  take a different medication on an empty stomach, which was apparently regular Tylenol.  *See id.*

23  at 9–10, 59.

24              On July 9, 2010, plaintiff visited Champen again, who ordered ten days of Tylenol #3 and

25  urgent X-rays.  *Id.* at 10.  Plaintiff received neither.  *Id.*

26  /////

27  _____

28              [1]  Although this allegation is from the amended complaint, the second amended complaint
incorporates the relevant allegations from the amended complaint by reference.  ECF No. 50 at 5.

1        Dissatisfied with his lack of medical care, plaintiff filed a "CDCR 602-HC" appeal ("first-

2 level appeal") on or around July 14, 2010.  *Id.* at 10, 59.  Plaintiff's request that the appeal be

3 heard on an emergency basis was denied.  *Id.* at 11, 65–66.

4        On July 19, 2010, plaintiff went the clinic for X-rays of, *inter alia*, his "[f]acial bones"

5 and "[o]rbits."  *Id.* at 11, 68.  Thereafter, he was taken to the emergency room, where defendant

6 M. Osman, M.D., informed him that he had a mildly displaced fracture of the right zygomatic

7 arch.  *Id.* at 11.  Dr. Osman had plaintiff transported to the outside hospital Doctor Medical

8 Center, San Pablo ("Doctor Medical Center").  *Id.*  The doctor there prescribed twenty Vicodin

9 pills and discharged him with instructions to come back in a few weeks.  *Id.* at 11, 75.

10        When plaintiff returned from the hospital, neither Dr. Osman nor Champen put him on a

11 soft meal diet.  *Id.* at 11–12.  Plaintiff also complained about the lack of treatment for his chronic

12 shoulder injury, including the failure to prescribe appropriate pain medication.  *Id.* at 12.  In

13 response, on July 23, 2010, Champen discontinued Tylenol #3 and prescribed Gabapentin for his

14 neuropathic pain.  *Id.* at 12, 77.  However, Champen did not order a soft meal diet.  *Id.* at 12.

15        On August 10, 2010, plaintiff went to Doctor Medical Center for his follow-up visit.  *Id.*

16 By this time, his weight had dropped from 165 to 140 pounds due to his inability to chew

17 normally.  *Id.*  The doctor there ordered that he receive a soft meal diet.  *Id.* at 12, 79.  Pursuant to

18 the doctor's orders, Dr. Osman and Champen put plaintiff on a soft meal diet that day.  *Id.* at 12–

19 13, 81.

20        On or around September 8, 2010, plaintiff received a response ("first-level response")

21 partially granting his first-level appeal.  *Id.* at 63.  "M. Lotenstein" signed it on behalf of R.L.

22 Andreasen, M.D., who was Chief Medical Officer ("CMO") of Inpatient Services at CMF.  *Id.* at

23 4–5, 61, 63.  In pertinent part, Dr. Andreasen granted plaintiff's requests for pain management, X-

24 rays, and a referral to an orthopedic specialist, but denied his request for high-calorie liquid

25 drinks.  *Id.* at 62–63.  Dr. Andreasen determined that plaintiff had received all the appropriate

26 relief he sought and, therefore, the first-level response did not contemplate further relief.  *See id.*

27        Plaintiff filed a second-level appeal on September 19, 2010.  *Id.* at 14.  This appeal was

28 denied in a response dated October 14, 2010 ("second-level response").  *Id.* at 86.  The second-

1    level response states that plaintiff's appeal "was reviewed by F. Santos . . . for Elam." *Id.*

2    Further, it indicates that, in contrast to plaintiff's first-level appeal, no one interviewed plaintiff in

3    connection with his second-level appeal. *Id.* Plaintiff filed his third-level appeal on or around

4    October 30, 2010. *Id.* at 14. In a response dated April 7, 2011 ("third-level response"), an

5    examiner denied this appeal. ECF No. 15 at 93–95. To support his decision, the examiner

6    reasoned that plaintiff received prescription pain medication, X-rays, a soft meal diet, and a

7    referral to an orthopedic surgeon. *Id.* at 94–95. Although the examiner noted that plaintiff did

8    not receive a high-calorie liquid diet, the examiner stated that plaintiff's "request for liquid drink

9    was not appropriate for [his] problem; [his] weight was within normal limits." *Id.* at 95. The

10   examiner concluded that plaintiff had "been evaluated by licensed clinical staff and . . . [was]

11   receiving treatment deemed medically necessary." *Id.*

12   On December 10, 2010, plaintiff underwent an operation on his shoulder. *Id.* at 15, 97.

13   According to operation report, although the surgeon removed "multiple loose bodies [associated

14   with] degeneration of the left shoulder," plaintiff "is well aware that [the] procedure will not

15   result in resolution of the degenerative change." *Id.* at 97.

16   **B.      Procedural Background**

17   Plaintiff filed a complaint under § 1983, ECF No. 1, which he amended on October 30,

18   2014, ECF No. 15. He alleges in his amended complaint that he sustained injuries after one of his

19   cellmates physically assaulted him, leaving him with various injuries. ECF No. 48 at 1. He

20   further alleged that the medical staff improperly delayed in prescribing him X-rays, pain

21   medication, and a soft meal diet to treat his injuries. *Id.* at 2. Based on these core allegations,

22   plaintiff asserts a claim under the Eighth Amendment for deliberate indifference to his medical

23   needs. *Id.* at 1.

24   In findings and recommendations issued on August 3, 2016, which the district judge

25   subsequently adopted (ECF No. 56), the undersigned found that plaintiff failed to state a

26   cognizable Eighth Amendment claim as to defendant Elam. ECF No. 48 at 4–6. In so finding,

27   the undersigned reasoned that plaintiff failed to allege that Elam, as CEO of clinical services at

28   CMF, "had any direct personal involvement in his medical care." *Id.* at 4. The undersigned also

4

reasoned that plaintiff could not "pursue a constitutional claim against defendant Elam for failing to provide sufficient answers or evidence in his appeal response." *Id.* at 5.  Further, the undersigned noted that plaintiff's own allegations indicated that the issues raised in his first-level appeal had already been resolved when Elam learned of them at level two. *Id.*  Additionally, the undersigned rejected plaintiff's theory that Elam was vicariously liable for his subordinates' alleged deliberate indifference, reasoning that his allegations were vague and failed to "allude to any specific instances of supervisory misconduct." *Id.*

Plaintiff filed his second amended complaint on August 29, 2016.  ECF No. 50.  Therein, he asserts Eighth Amendment and due process claims against Elam. *Id.* at 13–14.  In support of these claims, plaintiff generally alleges that Elam disregarded his medical needs by: (1) denying his appeals; (2) failing to supervise his staff in the execution of their duties; (3) failing to follow various prison policies; and (4) failing to train his staff to follow such policies. *See id.* at 10–14.  More specifically, plaintiff alleges that:

- He did not receive an X-ray of his jaw and that Elam ignored this request in the second-level response, *id.* at 7;

- His first-level appeal took more than thirty days to resolve in violation of prison policy, *id.* at 6;

- A prison official who participated in his primary care interviewed him in connection with his first-level appeal in violation of prison policy, *id.* at 12;

- He did not receive an interview in connection with his second-level appeal in violation of prison policy, *id.* at 8;

- Elam must have known of his medical conditions before his second-level appeal because he filed an emergency appeal and prison policy required Elam to consider it, *id.* at 9;

- Elam's failure to train his subordinates to comply with a prison policy regarding medical imaging services caused a delay in his being X-rayed, *id.* at 10–11; and

- The second-level response is deficient because, while it says F. Santos reviewed it for Elam, neither of them signed it, *id.* at 8; *see also* ECF No. 15 at 86.

/////

5

1      Elam moves to dismiss the second amended complaint, arguing generally that the

2  amended complaint does not remedy any of the deficiencies identified in the August 3, 2016

3  findings and recommendations.  ECF No. 51 at 7.  Elam argues that plaintiff continues to allege

4  that Elam "should be held liable for . . . deliberate indifference, not because he had any direct

5  involvement in the denial of Plaintiff's medical care when the misconduct occurred, but because

6  the process in which Plaintiff complained about the misconduct . . . was mishandled."  *Id.*  Elam

7  also argues that the second amended complaint, like its predecessor, lacks "specific instances of

8  supervisory misconduct."  *Id.* at 8.  For instance, Elam asserts that plaintiff "does not allege that

9  . . . Elam even knew about the delays in processing his x-ray requests or refusal to issue soft meal

10  diets . . . [,] [or that] Elam failed to train the specific staff that allegedly denied the health care

11  requests or delayed the X-rays."  *Id.*  Based on these alleged shortcomings, Elam requests

12  dismissal of plaintiff's second amended complaint with prejudice.  *Id.*

13      Plaintiff opposes Elam's motion and raises several counterarguments mirroring the

14  allegations in the second amended complaint.  First, he argues that he improperly failed to receive

15  an X-ray of his jaw and that Elam ignored this request in the second-level appeal.  ECF No. 61 at

16  2.  Second, plaintiff argues that Elam failed to ensure that his first-level appeal was processed

17  within thirty days as required by policy.  *Id.* at 3.  Third, plaintiff asserts that Champen

18  interviewed him in connection with his first-level appeal.  This interview, according to plaintiff,

19  violated a policy prohibiting staff persons who participated in the decision under appeal from

20  reviewing it.  *Id.*  Fourth, plaintiff asserts that CMF's policy was to interview inmates whose

21  appeals were partially granted and contends that Elam failed to interview him at level two despite

22  partially granting his first-level appeal.  *Id.*  Fifth, plaintiff cites various prison policies and

23  procedures and infers from them that Elam must have known of his medical condition before

24  receiving his second-level appeal.  *See id.* at 4–5.

25      Elam replied on February 2, 2017.  ECF No. 62.  Similar to his motion to dismiss, Elam

26  argues that plaintiff failed to sufficiently allege that Elam was personally involved in the delay in

27  plaintiff's medical care or that Elam knew about the delay.  *Id.* at 2–3.  Elam also argues that the

28  /////

delay in processing plaintiff's appeals did not harm him because plaintiff had already received the requested medical care before the appeals were decided. *Id.* at 3–5.

## II.      Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562–63, 570 (2007) (stating that the 12(b)(6) standard that dismissal is warranted if plaintiff can prove no set of facts in support of his claims that would entitle him to relief "has been questioned, criticized, and explained away long enough," and that having "earned its retirement," it "is best forgotten as an incomplete, negative gloss on an accepted pleading standard"). Thus, the grounds must amount to "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action. *Id.* at 555. Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). Dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citation omitted).

The complaint's factual allegations are accepted as true. *Church of Scientology of Cal. v. Flynn*, 744 F.2d 694, 696 (9th Cir. 1984) (citations omitted). The court construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiff's favor. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

The court may disregard allegations contradicted by the complaint's attached exhibits. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). Furthermore, the court is not required to accept as true allegations contradicted by judicially noticed facts. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987)). The court also may consider matters of public record. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (citations omitted). "[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d

7

752, 754–55 (9th Cir. 1994) (citations omitted).  Nor must the court accept unreasonable

inferences or unwarranted deductions of fact.  *Sprewell*, 266 F.3d at 988 (citation omitted).

In general, pro se pleadings are held to a less stringent standard than those drafted by

lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  The court has an obligation

to construe such pleadings liberally.  *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)

(en banc).  However, the court's liberal interpretation of a pro se complaint may not supply

essential elements of the claim that were not pled.  *Ivey v. Bd. of Regents of Univ. of Alaska*, 673

F.2d 266, 268 (9th Cir. 1982); *see also Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (per

curiam).

III.    **Legal Analysis**

    A.    **Eighth Amendment**

The Eighth Amendment protects prisoners from inhumane methods of punishment and

inhumane conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir.

2006).  Extreme deprivations are required to make out a conditions-of-confinement claim, and

"only those deprivations denying the minimal civilized measure of life's necessities are

sufficiently grave to form the basis of an Eighth Amendment violation."  *Hudson v. McMillian*,

503 U.S. 1, 9 (1992) (citation omitted).  "Prison officials have a duty to ensure that prisoners are

provided adequate shelter, food, clothing, sanitation, medical care, and personal safety."  *Johnson

v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted).  "The circumstances, nature, and

duration of a deprivation of these necessities must be considered in determining whether a

constitutional violation has occurred."  *Id.*  "The more basic the need, the shorter the time it can

be withheld."  *Id.* (citations omitted).

To state an Eighth Amendment claim predicated on the denial of medical care, a plaintiff

must adequately allege that: (1) he had a serious medical need; and (2) the defendant's response

to that need was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see

also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A serious medical need exists if the failure to

treat the condition "could result in further significant injury or the unnecessary and wanton

infliction of pain."  *Jett*, 439 F.3d at 1096.  "A prison official is deliberately indifferent to that

8

1  need if he 'knows of and disregards an excessive risk to inmate health.'" *Peralta v. Dillard*, 744

2  F.3d 1076, 1082 (9th Cir. 2014) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837

3  (1994)).

4       "Vicarious liability may not be imposed on a supervisor for the acts of lower officials in a

5  § 1983 action." *Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013)

6  (citation omitted); *see also Iqbal*, 556 U.S. at 676.  "A prison official in a supervisory position

7  may be held liable under § 1983, however, if he or she was personally involved in the

8  constitutional deprivation or a sufficient causal connection exists between the supervisor's

9  unlawful conduct and the constitutional violation." *Lemire*, 726 F.3d at 1074–75 (citation

10 omitted).  For a sufficient causal connection to exist, the plaintiff usually must show that the

11 supervisor had knowledge of the unlawful conduct.  *See id.* at 1085 (citation omitted) ("The

12 requisite causal connection can be established by setting in motion a series of acts by others, or by

13 knowingly refusing to terminate a series of acts by others, which the supervisor knew or should

14 have known would cause others to inflict a constitutional injury."); *Starr v. Baca*, 652 F.3d 1202,

15 1207 (9th Cir. 2011) ("[A] plaintiff may state a claim against a supervisor for deliberate

16 indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional

17 conduct by his or her subordinates."); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A

18 supervisor is only liable for constitutional violations of his subordinates if the supervisor. . . knew

19 of the violations and failed to act to prevent them.").

20      In some cases, a plaintiff may base a claim of deliberate indifference to medical needs on

21 a supervisor's failure to train his subordinates.  *Lemire*, 726 F.3d at 1085.  To prevail on such a

22 claim, the plaintiff normally must show that supervisors "are on actual or constructive notice that

23 a particular omission in their training program causes [subordinate] employees to violate citizens'

24 constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted); *see also*

25 *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (stating that § 1983 liability for deliberate

26 indifference to medical needs may attach where "supervisors were on actual or constructive

27 notice of the need to train." (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994))).  "A pattern of

28 similar constitutional violations by untrained employees is ordinarily necessary to demonstrate

9

1  [such notice] for purposes of failure to train." *See Connick*, 563 U.S. at 62 (citation omitted); *see*

2  *also Willard v. Cal. Dep't of Corrs. & Rehab.*, No. 1:14–cv–00760–BAM, 2015 WL 4495916, at

3  *7 (E.D. Cal. July 23, 2015) (citing cases) (stating that the "cases in which supervisors have been

4  held liable under a failure to train/supervise theory involve conscious choices made with full

5  knowledge that a problem existed").

6       In this case, plaintiff has failed to state a facially plausible claim against Elam for

7  deliberate indifference to his medical needs.  Plaintiff has not adequately alleged that Elam knew

8  of his medical complaints before he submitted the second-level appeal on September 19, 2010.

9  Plaintiff argues that Elam must have known of his complaints before then because, on July 14,

10  2010, he filed his first-level appeal on an emergency basis and prison policy required Elam to

11  consider his emergency request.  But the policy states that the Health Care Appeals Coordinator

12  ("HCAC") "will consult with the CEO **or** designee . . . to determine if the appeal warrants

13  classification as an emergency appeal."  ECF No. 50 at 25 (emphasis added).  Further, the

14  memorandum denying plaintiff's emergency request indicates that the HCAC consulted with the

15  CMO, Dr. Andreasen, not Elam.  ECF No. 15 at 66.  Thus, plaintiff's allegations fail to support a

16  plausible inference that Elam knew of his medical conditions before September 19, 2010.

17  Furthermore, while it is plausible that Elam received notice of plaintiff's medical needs on that

18  date, plaintiff's own allegations indicate that he had already received facial X-rays, a soft meal

19  diet, and various painkillers.  *Supra* at 3; *see also* ECF No. 50 at 7 (plaintiff's alleging that, by the

20  time he submitted his second-level appeal, "a few issue [sic] complained [of] in his appeal had

21  already been resolved").  Moreover, even if Elam learned of plaintiff's medical needs on

22  September 19, 2010, he still was not "personally involved in the [alleged] constitutional

23  deprivation."  *Lemire*, 726 F.3d at 1074 (citation omitted).

24       Plaintiff counters that, irrespective of Elam's personal involvement in the underlying

25  medical decisions, Elam acted with deliberate indifference to his medical needs by failing to

26  properly supervise his subordinates.  But plaintiff has not plausibly alleged that Elam's failure to

27  supervise was the cause of the subordinates' alleged deliberate indifference to plaintiff's medical

28  needs.  Indeed, plaintiff does not allege any specific supervisory functions or responsibilities, let

1    alone explain how Elam failed to comply with them.  Furthermore, plaintiff has not adequately

2    alleged that Elam knew of the medical staff's purported misdeeds until September 19, 2010.  By

3    then, however, essentially all of the challenged conduct had taken place.  *See supra* at 3–4.

4    Therefore, plaintiff has not stated a cognizable failure-to-supervise claim.

5         Plaintiff also alleges that Elam failed to train his subordinates to comply with a prison

6    policy regarding access to medical imaging services (e.g., X-rays).  The policy states that the

7    CEO is responsible for its implementation.  ECF No. 50 at 30.  Coupled with plaintiff's other

8    allegations, the policy may support the inference that plaintiff's X-ray requests were not

9    processed in a timely manner.  However, plaintiff has not plausibly alleged that Elam had actual

10   or constructive notice that the supposed failure to train his subordinates regarding the policy was

11   causing them to violate prisoners' Eighth Amendment rights.  Plaintiff has not alleged a pattern of

12   similar violations by untrained medical personnel.  In fact, plaintiff had already obtained his X-

13   rays when Elam received notice of the delay in processing them.  Plaintiff seems to contend that

14   he never received an X-ray of his jaw.  *See* ECF No. 50 at 7; ECF No. 61 at 2.  But plaintiff's

15   own medical records show that he received X-rays of his "[f]acial bones" and "[o]rbits" on July

16   19, 2010.  ECF No. 15 at 68.  Indeed, this is how the fracture of his right zygomatic arch was

17   discovered, *id.* at 68, 70–71, 73–75, which led to his receiving a soft meal diet, *id.* at 81–82.

18   Accordingly, plaintiff has failed to state a facially plausible failure-to-train claim against Elam.

19        Plaintiff raises additional allegations/arguments to support his assertion that Elam violated

20   his Eighth Amendment rights.  These averments center on the manner in which Elam and other

21   persons processed his appeals.  Concerning the first-level appeal, plaintiff alleges that it took

22   prison officials nearly two months to resolve it even though a policy required them to respond

23   within thirty days.  ECF No. 50 at 18.  Plaintiff also alleges that nurse practitioner Champen

24   interviewed him in connection with his first-level appeal.  According to plaintiff, this interview

25   violated a policy prohibiting staff persons "who participated in the event or decision being

26   appealed" from "review[ing]" the appeal.  *Id.* at 6, 18.  However, Elam did not handle the first-

27   level appeal and plaintiff does not adequately allege that Elam caused these violations through a

28   /////

11

1    failure to supervise or train his subordinates.  Therefore, these allegations do not state a viable

2    Eighth Amendment claim against Elam.

3           Regarding the second-level appeal, plaintiff notes that Elam did not interview him even

4    though he partially granted his appeal.  Plaintiff contends that this failure violated a prison policy

5    providing that "[p]artially granted and denied appeals require an interview."  *Id.* at 19.  But

6    plaintiff has not alleged how Elam's violation of this policy demonstrates deliberate indifference

7    to his medical needs.  It is speculative to infer that Elam's interviewing plaintiff would have

8    affected his appeals or medical care.  *Twombly*, 550 U.S. at 555 (citation omitted) ("Factual

9    allegations must be enough to raise a right to relief above the speculative level[.]").  Moreover,

10   plaintiff had already received some of the care that he sought.  Beyond that, plaintiff suggests that

11   Elam disregarded his second-level appeal because neither he nor F. Santos signed it even though

12   their names appear on it.  *See* ECF No. 15 at 86.  But this assertion is inconsistent with the vast

13   majority of plaintiff's allegations and arguments, which presuppose that Elam decided the

14   second-level appeal.  In any event, the assertion does not bear on the question of whether Elam

15   was deliberately indifferent to plaintiff's medical needs, whether through a failure to

16   supervise/train or otherwise.

17          For the foregoing reasons, plaintiff has again failed to state a cognizable Eighth

18   Amendment claim against Elam.  Accordingly, this claim should be dismissed with prejudice.

19   The claim is facially implausible and there is no factual or legal basis to infer that supplemental

20   allegations would salvage it.  *See Jordan v. Edwards*, No. CV 15-3125 DOC (FFM), 2016 WL

21   2753389, at *4 (C.D. Cal. Apr. 18, 2016) ("[I]f it is absolutely clear that the deficiencies of the

22   complaint cannot be cured by amendment, a pro se complaint may be dismissed without leave to

23   amend." (citing *Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *Swartz v.

24   KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007), *report and recommendation adopted*, No. CV 15-

25   3125 DOC (FFM), 2016 WL 2743457 (C.D. Cal. May 10, 2016))).

26       **B.    Due Process**

27          "The Fourteenth Amendment reads . . . nor shall any State deprive any person of life,

28   liberty, or property, without due process of law, and protects the individual against arbitrary

12

action of government[.]" *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 459–60 (1989) (citation omitted).  Courts "examine procedural due process questions in two steps[.]" *Id.*  "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State[.]" *Id.* (citation omitted).  "[T]he second examines whether the procedures attendant upon that deprivation were constitutionally sufficient[.]" *Id.* (citation omitted).

Here, plaintiff's due process claim fails at the first step.  Plaintiff's relevant allegations center on the manner in which Elam and other persons processed, and ultimately denied, his appeals.  However, as noted in the August 3, 2016 findings and recommendations, an "inmate has no right to a specific grievance or appeal procedure."  ECF No. 48 at 4 (citing *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003)); *see also Bingham v. Thomas*, 654 F.3d 1171, 1177–78 (11th Cir. 2011) ("[A] prison grievance procedure does not provide an inmate with a constitutionally protected interest."); *Jones v. Cannedy*, No. 2:10–cv–2174 KJM KJN P, 2012 WL 3260457, at *5 (E.D. Cal. Aug. 8, 2012) ("[P]laintiff cannot state a cognizable civil rights claim based solely on allegations that prison officials ignored, inadequately responded to, or failed to properly process, plaintiff's administrative grievances."), *report and recommendation adopted*, No. 2:10–cv–2174 KJM KJN P, 2012 WL 3260457 (E.D. Cal. Sep. 25, 2012).  Accordingly, plaintiff has failed to state a cognizable due process claim.

Therefore, it is recommended that this claim also be dismissed with prejudice.  As with plaintiff's Eighth Amendment claim against Elam, it is facially implausible and there is no factual or legal basis to infer that supplemental allegations would salvage it.  *See Jordan*, 2016 WL 2753389, at *4 (citations omitted).

## IV. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.   Elam's motion to dismiss (ECF No. 51) be granted; and

2.   Plaintiff's claims against Elam be dismissed with prejudice.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written

13

objections with the court and serve a copy on all parties.  The document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

objections shall be filed and served within seven days after service of the objections.  Failure to

file objections within the specified time may waive the right to appeal the District Court's order.

*Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th

Cir. 1991).

Dated:  March 9, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

14